Good morning, Your Honors. May it please the Court. I'd like to first of all commend the Court already on its stamina. I was recently down in San Jose on the 6th Appellate District and they already had taken two breaks by this time in the morning, so. Well, you shut the clock off. Anybody who rides with me from Pocatello, Idaho to St. George, Utah knows they only get to get out when I stop for gas. This is the same kind of stuff, so. These two have my skirt. They can pull it and we'll quit, but they have more stamina than I, so go forward. Thank you. May it please the Court. I stand before you today as representative of Kim and Jim Carson, who are two California borrowers who are the victims of a foreclosure engine which has gone awry. The engine of foreclosure went so out of control that in 2012 the California legislature was really forced to pass a number of new laws which severely limited the ability of a bank to foreclose on people while they were in loan mod review or while they were trying to otherwise affect some sort of foreclosure prevention alternative. And I'm sure the Court is familiar with the preamble to the Homeowners' Bill of Rights, which we quote a couple of times both in our moving papers and our reply papers, which clearly states that it is the public policy of the state of California not to foreclose needlessly on homes. Kim and Jim Carson lost two properties, one in 2010 in December and another one year and four days later in 2011 because of conduct by Bank of America, which I think is unquestionably wrongful and constitutes wrongful foreclosure. The first property was on Willow Avenue. We refer to it as the Willow property. In that case, the allegations of the complaint state that Kim, Ms. Carson, was told that she was going to be modified, that her loan modification application was going to be accepted. Well, in case I missed it, it seems to me that your arguments about breach of contract or promissory estoppel or fraud or violation of 17200 on appeal were not really argued. Frankly, the thing that I saw on appeal really doesn't talk about those issues. So I'm prepared to address whether Bank of America complied with the statutory foreclosure procedures. I'm prepared to talk about whether they didn't interfere with the right to reinstate the loan, which I think you sufficiently argued. And I'm willing to talk even about whether the tender rule has been abrogated or whether they erred on the breach of covenant on tort principles. But I think you've waived your arguments for breach of contract, promissory estoppel, fraud, or violation of the business code 17200 based on your briefs. Okay. Well, we certainly— I mean, I'm glad you tell me where you argued it. I'm glad to find it, but I couldn't. I certainly—we did not try and argue the fraud because there was an alternative grounds for dismissal of our fraud claim enunciated by Judge Englund. However, the breach of contract claim is based on Section 19 of the Deed of Trust, which allows for reinstatement. So in as much as reinstatement— We're on reinstatement. It's all reinstatement. This is all about reinstatement. I mean, I'm just trying to make sure that you're not trying to allege a contract outside of what the contract is. And that, I thought you very well might go down on a breach of contract. Not going there at all. Okay. We're saying that the breach of contract was interference with reinstatement, that the promissory estoppel was the, you know, interference with reinstatement, saying that the foreclosure sale was not going forward, which is the basis of the reinstatement interference, and that the 17-2 claim flows from this. And it's all reinstatement. We really at Mellon Law Firm are excited about this tender issue because we see it so often, and this was the focus of our brief. We really want to talk—all of those causes of action were dismissed on tender. There was no alternative grounds given for the dismissal of the promissory estoppel, any of them. The 2924 claim, the breach of contract, or breach of the covenant of good faith and fair dealing, they were all dismissed on tender. And that's so unfair. Ms. Carson, on the will of property, was $9,000 in arrears when the bank told her that her loan modification had been—was being approved and the house would not sell. And then the house sold in December of 2010. She went another year trying to work out some kind of deal on her Connecticut property, and when December came and it looked like they were going to foreclose on her again, she started requesting reinstatement quotes, was not able to get a reinstatement quote, so she put together her own calculation and submitted approximately $24,000. Which was the 24,000—was it the entire loan? No. We think so. We think that was enough. We're not sure, but we believe that that was the amount. It was acknowledged by the bank and the representative told her. Well, my worry about this is this. It seems to me the law is that the defaulted borrower may reinstate the loan by tendering the arrearage plus late and attorney's fees up until five business days before the scheduled sale, even after the statutory right to reinstate lapses. Then the tender rule allows the defaulted borrower to avoid loss of property by tendering the entire outstanding loan balance at any time prior to sale. And I tried to find anything in these facts which then meet that. Well, the Susilo case is a case— I'm not talking about the case. I'm talking about the facts here. When we've got a chance to do what she has to do to get rid of the sale, did they ever do anything there? After that day was over, then did they do what they needed to do under the tender rule? And I couldn't find any facts to suggest they did either. These facts are exactly the Susilo case. In the Susilo case, there was an agreement after the five days, within the five days, to accept a reinstatement amount, and the borrower in the Susilo case was told that the sale would not go forward. And the sale went forward, and that was a premature case of a violation of 2924. Also, the La Jolla case talks about that the bank and the borrower can bargain for reinstatement on terms which are different than the basic terms which are set forth in 2924. So yes, had she not been told by the bank representative that, yes, we've received your tender, we're not going to go forward and sell it, she would have missed her deadline. But the allegations say that they told her that they got her money, and the sale would not have gone forward. Had she been told, we got your money, but the sale is still going forward, or we didn't get your money, she would have filed bankruptcy that morning, and she would have reinstated on some Chapter 13 five-year plan, and it would have been easy for her to save the property. So have a look at the Susilo case. I think it is exactly the same as the Connecticut property. So Judge England dismissed the entirety of these causes of action because we did not allege tender of the entire amount due. Once upon a time in California, the tender rule, which states that you must tender the entire amount of the secured indebtedness to bring a challenge to a foreclosure, a wrongful foreclosure, that once upon a time made sense. Because once upon a time, over 82 years ago, there was acceleration. And in a scheme of acceleration, there is a reason to tender the entire amount of the indebtedness, because the bank can lawfully accelerate the amount, and that's the only right you have is to pay the entire amount. But after 1933, Civil Code 2924 came into existence, 2924C, and the right of reinstatement was created. And in reinstatement, notwithstanding any contractual provision to the contrary, and it is an unwaivable right, you cannot sign a contract which waives your right to reinstatement, acceleration is no longer the rule in California. So I would say to the Court, but how does, doesn't that statute have a five-day prior-to-sale requirement? If you want to reinstate subject to the statute, you have to do so five days prior to the sale. Unless there is an agreement with the bank to the contrary, such as the Loya case and the Susilo case states. But if you are told, what my point is, that if you are put off notice, if you are told there's not going to be any sale, if you are told you get a loan modification, or if you never even knew about a sale, such as in some of the cases, if it's just sold out from under you without proper notice, it would never be appropriate if you had the ability to reinstate, under the reinstatement rules, to demand the entire amount of the indebtedness. That essentially abrogates the right of reinstatement and re-brings back acceleration as the norm. Now, there are cases since the passage of 2924 which seem to demand the tender of the entire amount due. I'd like to talk about those, because there are exceptions to the right of reinstatement. One of the exceptions is when a junior lien holder wants to redeem a property. If a junior lien holder shows up at a sale and wants to protect their interest, they have to redeem it. The junior lien holder has to pay the entire amount due. And two of the most often-cited cases for this old, judge-made rule that the entire amount of the debt needs to be tendered are Arnold and FPCI. You see those all over the briefings. You see those in the judicial opinions. In both FPCI and in Arnold, there were junior lien holders being foreclosed on. They had no right of reinstatement. If they wanted to protect their interest, they had to go back in and reinstate. Another case that's bad for us, that's cited against us all the time on this side of the bar, is the Carlson case. In the Carlson case, the man alleged that, oh, well, I was going to tender the entire amount due, but then there were problems because he had to sell a property to do it. He didn't actually have the money. Abdallah, another bad case for us. Abdallah is often cited for the proposition. If you look at Abdallah, it just cites Arnold, FPCI, and Carlson, and there's three sentences worth of treatment. In Abdallah, there was a fraudulent bankruptcy. The bankruptcy court dismissed the bankruptcy and gave the bank one day or two days to sell the thing. They never would have been able to reinstate. There is no California case where a borrower is alleging, I could have reinstated, and the court is nevertheless demanding tender of the entire amount due. There are, in fact, numbers of cases exactly for the opposite proposition, that when reinstatement is contemplated, it is the amount of the arrears that should be tendered. Susilo is one. My brief has a bunch of them. In the Lona case... I mean, it seemed to me that Lona and Moeller and the civil codes, of course, 2903, 2905, really suggest that if you're going to do something after the statutory right to reinstate lapses, that the tender rule allows the defaulted borrower to avoid the loss only by tendering the entire outstanding loan balance at the time prior to sale. I mean, I look to those cases. If I were to cite them, that's what I think they said. My worry is... Okay. He's going to have to distinguish the two cases you are citing. There's no question. But what I'm really worried about, it seems to me that if I don't have those two cases as distinguishing, then I'm stuck with, you can do what you need to up to to reinstate whatever you want up to someday, but after that, you've got to come up with the amount. What if you don't know the house is being sold? What if it's just sold? A total failure of notice. Now, we're saying... Well, we can come back to the notice and we can talk about what you have objected to and what notice they gave you, but I don't think notice is your best issue. Because did you object? Did you ever object that, I mean, there was a trust deed that was filed, it recited all the statutory notice requirements, all the procedures that were required as to the laws, it gave prima facie evidence, if you will, of compliance with those requirements. You didn't challenge the trustee's deed in this case. But in the Willow... I'm sorry, I don't mean to interrupt. And all I'm saying is it seems to me that your notice arguments are a little worrisome. The only way you get around them is to cite the cases you do and say, guess what, I had an agreement with the bank. In the Willow case, they told her, your loan is being modified, you're not being foreclosed on. That clearly puts her off notice. I understand your reliance on those cases. I'm just trying to see, what if those cases don't apply? Well, there's another reason why the Lona case should not apply here, and because in this case, we are seeking damages, we are not seeking to unwind the trustee's sale. We're seeking damages for a wrongful foreclosure. And Lona, very specifically, was an action in equity where a borrower seeks to set aside a trustee's sale and therefore was required to do equity before the court. Now, I still think any time you could have reinstated, equity should be to tender the entire amount of the arrears. Otherwise, a bank can ignore your reinstatement right, go ahead and foreclose on you, and then demand the entire amount of the note. That's not fair. There have been some cases which have said... Well, it seems to me that's your argument. Of course, that's the basis of the argument. It's all equity. It's not fair to have a pay-to-play provision in our judicial system that can be abused and eviscerates a core right, the right to reinstatement. Just really quickly, because I'm out of time. If you look at recent cases on this, the West v. J.P. Morgan case, Chase case, makes very clear that claims for damages, you do not have to do equity. In that case, there were causes of action to set aside, but then there were also causes of action just for damages. Is there another case you want us to look at? Yes. Without explaining it, because your time is done. Let me do that right at the very end in 30 seconds. I'll find it. You're all done. You're finished. I'm totally at the end. You're a minute and 38 over. You're in red. It's in our reply brief right there. We talk about West. Okay. If it's in your reply brief, that's good. Thank you, Your Honor. All right. Thank you. Counselor, Mr. Ives. Good morning, Your Honors, and may it please the Court. I'm here on behalf of Defendant and Pelley Bank of America. I really only have a couple of very quick points. I know the Court is read and familiar with our brief, so I don't want to belabor what's already there. Number one is a point that Judge Smith brought up at the very beginning of a plaintiff's case in that the only argument, the only cause of action that they argue for on appeal is the breach of implied covenant claim. There's no mention or argument or authority regarding the remainder of the causes of action in the Carson Second Amended Complaint. It's not enough just to say that the district court erred in its reasoning, and therefore, my complaint is revived. This Court is going to review that Second Amended Complaint de novo, and it's going to look and see if those allegations state a cause of action for itself. And so what we have is just an argument that the district court erred on the tender rule and it misapplied that. But that doesn't by itself show that any of these other causes of action are viable. Can I go right and ask you about the Cicillo case and your take on that case from Northern District of California? Your Honor, I will admit that I'm not familiar with that and I don't have the facts and the law of that case at my fingertips. I'm unaware of any cases that are contrary to the general rule that any cause of action that is implicitly integrated with wrongful foreclosures or alleged wrongful foreclosure that the tender rule does not apply. And in fact, it seems to me that the plaintiffs are, while they're saying that the statute has abrogated the tender rule, I don't think there's really any tension between the two. And certainly if there was, it would have come to light in the last 80 years. What we have is a statute that is comprehensive that lays for the entire step-by-step process for a nonjudicial foreclosure. In particular... There was one other case he cited to us besides Cicillo. Willow. No. Willow's the property. What is that other case? I didn't write it down because I was talking to you. There were two cases that go where you wanted to go. I wanted to have him respond. All right. Fine. Okay, so my first major point was just that I think they've waived all causes of action on appeal other than perhaps the breach of implied covenant. And I think as far as that goes, they haven't alleged any facts showing that BIA actually did anything to interfere with the right to reinstate. There's no allegation that they made any effort to reinstate on the Willow property at all. As far as the Kinetic Court property, what they're alleging is that they requested a reinstatement amount four business days before the sale. And then the day of the sale, they tried to tender $24,000. Neither of those allegations supports... shows any violation of the statute. The statute has a five-day drop-dead cut-off line. They had to request in writing for a reinstatement amount. They did not do that. And then they tried to reinstate what they thought was the reinstatement amount of $24,000 on the day of the foreclosure sale. And, of course, that, of course, does not apply. Once that five-day deadline has passed, then it's the entire redemption amount. So there's really no tension between these two rules. I mean, the reinstatement goes up to five days before the sale. After that, it's the entire redemption amount. They're really... I know the parties have spent a great deal of time talking about the tender rule. But at the end of the day, that really is not an issue that even needs to be decided. It's even really adequately brought up because they never exercised the right to reinstate by either reinstating before five days... But their argument, counsel, isn't that they didn't exercise. Their argument is they asked the bank about the foreclosure. The bank said, don't worry about your payment there because you're going to be put in another program which is going to do what needs to be done for you. And, therefore, they didn't tender. Therefore, they didn't try to reinstate. And they didn't tender at the end. All they did was go on, and the bank is, on one hand, being nice, saying, don't worry about it, and now we're going to foreclose. And we do foreclose. And the notices keep coming, but relying on the bank, what were we supposed to do? That's his argument. And his argument is that these cases that he cites, which that's why I wanted you to focus in on them because he cited them, suggest he doesn't need to at that point. Yes, Your Honor. Their theory of the case is that, you know, if they had genuinely and truly known that this was really going to go to sale, they would have reinstated. The problem with that is that they did know that this was going to sale. The Bank of America and the trustee followed the exact requirements of the statute. It's not part of the record, but obviously each month they're sending them a bill saying you have to pay your monthly mortgage and this is exactly what you owe. Then we do in the record show a notice of default for both properties that tells them exactly what they need to do to reinstate. And they never did. And they never did. So what they're really doing is asking this court to come up with a rule that would effectively abrogate both the statute and a tender rule. What they're saying is, well, we can ignore the formal written notices and just allege that we got oral assurances that, you know, this really isn't going to go to the sale, isn't going to go forward. That would effectively undermine the statute itself. And there's really, there's no, I would hope the court would, you know, exercise any sort of caution before it would adopt any sort of rule like that because we would obviously see a wave of cases making the same exact allegation. What we do have in the record is compliance with the statute. We have a formal notice saying this property is in default. It's going to go to sale unless you reinstate. Then we have a formal notice of trustee sale saying 20 days out, this is going to go to sale. And in order to keep that sale, you have to do X and Y. To simply have an oral, rely on an oral assurance, you know, that negates those written formal notices, that would not, for instance, state any sort of viable breach of contract claim, for instance, because you can't have... The biggest problem they have is the breach of contract claim is gone. I mean, what I'm trying to do is find the law then that would abrogate what you're arguing and he put together some cases and I... And frankly, I... I found the other one. And the Cicillo case is a pretty heavy case for you to talk about. You got the other one? Well, I think it's in the brief in the next page. Anderson v. Hart, Federal Savings and Loan. Right. Yes. Well, of course, I believe Cicillo is a federal district court case, so we're not talking about a binding interpretation of California law. West really doesn't apply at all. West was a case that, in fact, applied the tender rule to most of the claims. What the West court said was that they had a viable breach of contract claim based on something apart from the foreclosure. In that case, there was a trial period plan, what they call, where the borrower makes three payments and after you make those three payments, they are offered a final loan modification offer. In that case, the allegations were they made the three payments and then they didn't get the final loan modification offer. So that's not really... It's just a completely different area. In fact, the part of the West case that's on point really helps us, where it applies the tender rule to the remaining, the other traditional foreclosure causes of action. It was Anderson v. Hart Federal Savings that's cited as an example of a claim for interference with the right of reinstatement under... It's a Cal App case, so I don't know. Well, I'm not entirely familiar with it. I do know that there is only one case that I'm aware of where the tender rule was not applied and a plaintiff was allowed to go forward with claims for damages. And that is actually Munger v. Moore, I believe it is. And in that case, the beneficiary actually told the trustee, don't accept the reinstatement amount. Actually said, you know, if they try to reinstate, don't accept that. So in that case, it went to sale and the purchaser was actually the beneficiary. So in that case, you didn't have a bona fide third-party purchaser, so there was no presumption of finality of the sale was proper because it was the beneficiary. And the reason they were able to state a claim for damages was because of, you know, the beneficiary actually told the trustee not to take the reinstatement amount. Would you, in your mind, have a... Would a plaintiff have a cause of action in a scenario in which, during the five-day period prior to sale, there was an email from somebody purporting to be from Bank of America that said, don't worry about the sale as long as we get the reinstatement amount rather than the full amount due on the loan? And hypothetically, you're talking about between the lapse of the five-day period? Correct. Three days before sale. Under the statute? No. The statute itself says that once that period lapses, there is no claim at all against the beneficiary. Would they potentially have a non-statutory claim? If there was something in writing saying that that would be something that would distinguish this case, where there would be something in writing, I suppose you could have potential causes of action in that case if there was a, you know... You would get towards the Munger v. Moore situation. But I think here, that would be easily distinguishable in that we have formal notices, and they've never effectively... They never effectively exercised that right to reinstate. So really, that is the heart of their problem, is they have stated no claim or cause of action because they never effectively reinstated there. So we don't even really need to get to the tender rule, which would only come into play... You know, if they state a cause of action, then presumably we'd come back and say, well, the tender rule might bar this. Their problem is sort of at the gate. At the very first instance, they haven't effectively exercised their right to reinstate. And it's my understanding there was never, ever, any written request to say what amount they should have tendered... No, I shouldn't say tendered. What amount they should have given to reinstate. That is correct, Your Honor. The allegations show that there was never any oral or written request with respect to the Willow Street property. And the allegations are there was one oral request four business days before the trustee sale on the Connecticut... Which would not have been in the reinstatement period. Exactly. Even that would not be an effective reinstatement. So at the end of the day, we just don't have an effective reinstatement. The tender rule discussion by both parties really is slightly academic in that we don't even have to reach that issue. So unless the court has any questions... We understand. I think we understand the arguments very well. Thank you very much. And... Pardon? Ten seconds.  The court below is requiring hundreds of thousands of dollars if the client wishes to maintain a wrongful foreclosure action when there were thousands of dollars in arrears at stake. There are lots of cases... Ten seconds is all done now. Thank you very much. Lots of cases don't apply the tender rule. Okay, thank you very much. Thank you. All right. Case 1315368 is submitted. We'll move to 1315396, Hartram v. Las Vegas. Thank you.
judges: Gleason, Schroeder, Smith